UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles F. SHAVERS,
Defendant-Appellant.

No. 79–5368.

United States Court of Appeals,
Fifth Circuit.

April 8, 1980.

Joel Kaplan, Robyn Hermann, Asst. Fed. Public Defenders, Miami, Fla., for defendant-appellant.

A. Scott Miller, Sonia Escobio O'Donnell, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before HILL, KRAVITCH and THOMAS A. CLARK, Circuit Judges.

KRAVITCH, Circuit Judge.

Charles Shavers appeals his conviction of assault with a deadly weapon in violation of 18 U.S.C. § 113(c).[1] For the reasons stated below, we reverse.

## I. *Facts*

This case arose out of an altercation at the Key West Naval Hospital in Key West, Florida, between appellant, a food service worker, and Rolle, a cook. Shavers complained to his supervisor that Rolle was in appellant's work area cutting Key Lime pies and interfering with his work. The supervisor asked Rolle to leave. Shortly after Rolle left he met Shavers in the restroom and allegedly struck him with brass knuckles.

Shavers reported the incident to Masterson, the food management officer. Masterson requested statements concerning the incident from both men. Shavers agreed, but Rolle refused. After taking Masterson to the scene of the beating and restating the events, appellant returned to the kitchen where he found Rolle cutting vegetables with a large knife. As he passed by the knife rack, appellant reached up, grabbed a butcher knife and moved in front of Rolle.

What happened next is hotly disputed. Masterson testified Shavers made several crossing swipes with his knife in front of Rolle. As Rolle fell back, Shavers slashed at him.

Shavers claimed he acted in self-defense. He testified that upon returning to the kitchen, he saw Rolle with a knife. Fearing Rolle, who earlier had beaten him and allegedly threatened to kill him, Shavers grabbed a knife to protect himself. When he perceived Rolle raising his knife, he swung his knife at Rolle.

On appeal Shavers challenges: (1) the court's refusal to ask defense-requested questions on voir dire, (2) the court's failure to declare a mistrial when the government on cross-examination impeached defendant with his prior silence, (3) a jury instruction which appellant argues amounted to directing a verdict, and (4) the court's admission of evidence of an extrinsic act allegedly committed by appellant.

## II. *Voir Dire*

Appellant first argues that he was deprived of his right to an impartial jury when the judge refused to ask the following requested voir dire questions:

1) Have you or any of your relatives or close friends been the victim of a crime? If so, please state the following:

a) the nature of the crime

b) whether a gun, knife or other weapon was used.

. . . . .

14) Do you have any religious or philosophical beliefs which preclude you from believing that a person can justifiably use violence to protect himself from attack by another person?

. . . . .

16) Have you or any of your relatives or close friends suffered from any serious lacerations? If so, please state:

---

1. Federal jurisdiction is predicated on special territorial jurisdiction under 18 U.S.C. §§ 7(3), 113(c).

a) how the injury was inflicted

b) whether you or your relative/friend received any permanent damages from the injury.

. . . . .

18) Have you or your relatives or close friends ever been compelled to defend yourself (themselves) and/or your (their) property from attack? Have you or your relatives or close friends ever been provoked into a violent confrontation?

■ The purpose of voir dire is to allow a defendant to evaluate prospective jurors in order to select a fair and impartial jury. However, under Fed.R.Crim.P. 24(a) a trial court has broad discretion in conducting a voir dire. This discretion includes whether or not to submit suggested questions to the jury. *United States v. Delval*, 600 F.2d 1098, 1102 (5th Cir. 1979).[2]

■ *Delval* established that the standard for evaluating the district court's exercise of its discretion is whether the means employed to test impartiality have created a reasonable assurance that prejudice would be discovered if present: "[T]he central inquiry is whether the district judge's 'overall examination, coupled with his charge to the jury, affords a party the protection sought' . . . ." 600 F.2d at 1102–03 (citations omitted).

Here, appellant's submitted but unasked questions numbered 1 and 16 were for the purpose of inquiring into experiences which could cause a prospective juror to be prejudiced against appellant. *United States v.*

*Poole*, 450 F.2d 1082 (3rd Cir. 1971). Certainly, a juror who has been the victim of a crime involving a knife or gun or who has suffered lacerations in an altercation might well be prejudiced against one charged with assault with a deadly weapon.

The trial judge refused to ask appellant's questions because he felt that they were "basically covered with the questions that were asked by the Court or were not really material so far as obtaining a fair and impartial juror."

We disagree. The district court's questions were too broad.[3] Inquiring generally about one's impartiality or participation in a criminal case as a witness or defendant fails to reach the important concerns highlighted in appellant's proposed questions and might not reveal latent prejudice. The court's questions did not afford Shavers the protection he sought and to which he was entitled under *Delval*. Appellant's proposed questions were "reasonably necessary to enable the accused to exercise his peremptory challenges" and "pertinent to the inquiry." *Cook v. United States*, 379 F.2d 966, 971–72 (5th Cir. 1969). Therefore, we find abuse of discretion on the part of the trial judge in refusing to ask questions 1 and 16.

### III. *Impeachment with Prior Silence*

During the cross-examination of Shavers, the prosecutor, over objection, asked him if he had told the FBI agent investigating the incident that Rolle had hit him with brass knuckles.[4] Shavers replied that he had not

---

2. In *Delval*, we held that the district court did not abuse its discretion in declining to question prospective jurors individually and specifically during voir dire concerning any possible conversations with another juror regarding his activities as a drug informant. *See also United States v. Carroll*, 582 F.2d 942, 946 (5th Cir. 1978); *United States v. Price*, 573 F.2d 356, 360–61 (5th Cir. 1978); *United States v. Ledee*, 549 F.2d 990, 992 (5th Cir.), *cert. denied*, 434 U.S. 902, 98 S.Ct. 297, 54 L.Ed.2d 188 (1977); *United States v. Williams*, 573 F.2d 284, 287 (5th Cir. 1978).

3. The court's questions included the following:

THE COURT: Have any of you ever participated in a criminal case either as a witness or as a defendant? (R. 7).

. . . . .

THE COURT: Are any of you or any members of your families presently under a charge of having violated any criminal statute? (R. 7).

. . . . .

THE COURT: Do any of you know of any reason why you could not sit as a completely fair and impartial juror and reach a verdict based solely on the evidence which you will hear and the instructions which I will give you? (R. 8–9).

4. By Mr. Miller:

because he was advised not to talk to the agent. Appellant appeals the denial of his motion for a mistrial.

■ It is settled law that prosecutorial comment on a defendant's silence for substantive or impeachment value is constitutionally prohibited. *United States v. Dixon,* 593 F.2d 626, 628 (5th Cir.) *cert. denied,* —— U.S. ——, 100 S.Ct. 126, 62 L.Ed.2d 82 (1979). The government does not dispute the fact that it referred to appellant's silence for purposes of impeachment. Rather, it argues that no error occurred because the record is unclear whether the questioning by the FBI agent was pre- or post-arrest; therefore it must be assumed that the interview occurred before appellant was placed under arrest and given *Miranda* warnings. According to the government, no error was then present because *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), and *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), do not apply to pre-arrest situations.

The government has overlooked our recent decision in *United States v. Henderson,* 565 F.2d 900, 902 (5th Cir. 1978), in which we held:

> The silence of an accused who has not been given a *Miranda* warning cannot be used against him to impeach his credibility, unless his silence is inconsistent with his innocence and inconsistent with his

exculpatory statement given at the trial. Otherwise, it lacks significant probative value and carries with it an intolerable prejudicial impact.

565 F.2d at 905. *See also United States ex rel. Allen v. Rowe,* 591 F.2d 391, 399 (7th Cir. 1979); *but cf. United States v. Serrano,* 607 F.2d 1145 (5th Cir. 1979) (silence found to be totally inconsistent with defendants' claim of innocence).

■ As a fallback position, the government submits that the error was harmless because the evidence of guilt was overwhelming. To support its position it contends that three witnesses testified to the same sequence of events, while appellant's version was uncorroborated and frivolous. However, the forcefulness of this argument weakens when one considers that the undisputed evidence was that Rolle had recently beaten appellant and had previously threatened him and other co-workers; and further that the jury was at one point hopelessly deadlocked on a verdict.[5]

Our standard for determining whether prosecutorial comment on defendant's silence for substantive or impeachment value is harmless has been somewhat uncertain. In *Chapman v. United States,* 547 F.2d 1240, 1249–50 (5th Cir.), *cert. denied,* 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977), we attempted to harmonize our decisions concerning *Doyle* violations and the

---

Q. Now, did you ever tell Agent Boone of the FBI that you were hit by Mr. Rolle with brass knuckles?
Mr. Kaplan: Objection.
The Court: Overruled. [Didn't you do the same thing? [The comment probably referred to the fact that defense counsel had impeached government witnesses on cross-examination with their previously written statements. (*See* R. 65–66, 79–80.)]
Mr. Kaplan: I beg your pardon.
By Mr. Miller:
Q. You spoke to Agent Boone of the FBI, didn't you?
A. Yes.
Q. In fact, he came to see you about this incident, didn't he?
A. Yes.
Q. Did you ever tell him that you were hit by brass knuckles?
A. No, Sir. Because I was advised not to talk to him. (R. 115–16).

Later on in the cross-examination, the following transpired:
By Mr. Miller:
Q. You are sure you are not lying?
A. I don't have to lie. I never lied in my life.

    \*    \*    \*    \*    \*    \*

Q. Are Mr. Masterson and Mr. Sebesta lying?
A. They sure are.
Q. How about Mr. Boone? Is he lying?
A. About what?
Q. About the facts.
Mr. Kaplan: Mr. Boone never testified.
The Court: Sustained. It is outside the record. (R. 118).

5. A guilty verdict was returned only after the court, over defense objections, gave the deadlocked jury an *Allen* charge.

harmless error test by placing cases into three distinct categories.[6]

Unfortunately, as was noted recently in *United States v. Dixon*, 593 F.2d 626 (5th Cir. 1979), many cases lie somewhere in between the categories discussed in *Chapman*. In such situations we must seek refuge in the case by case rule of *United States v. Davis*, 546 F.2d 583, 594–95 and n.31 (5th Cir.), *cert. denied*, 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977). "The decision requires an examination of the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant's guilt." *United States v. Meneses-Davila*, 580 F.2d 888, 890 (5th Cir. 1978).

We have held that even a single reference on direct examination to defendant's silence carried an intolerably prejudicial impact, where the defendant's exculpatory story was not totally implausible and the government's inculpatory evidence was not overwhelming. *United States v. Impson*, 531 F.2d 274 (5th Cir. 1976), *cert. denied*, 434 U.S. 1050, 98 S.Ct. 900, 54 L.Ed.2d 803 (1978).

The facts of the present case are closer to *Impson* than to *United States v. Serrano*, 607 F.2d 1145 (5th Cir. 1979), *United States v. Dixon*, 593 F.2d 626 (5th Cir. 1979), and *Chapman v. United States*, 547 F.2d 1240 (5th Cir. 1977), where the evidence against the defendants was much stronger and the prejudicial impact on the defendant was considerably lessened by actions by the trial judge.

Therefore, we hold that it was reversible error for the prosecutor to impeach appellant with his prior silence. *See also United States v. Edwards*, 576 F.2d 1152 (5th Cir. 1978).

## IV. *The Jury Instruction*

■ Appellant objects to the following instruction given by the trial judge to the jury.

> Secondly, after that altercation in the men's room was over, unless something else happened, there would be no legal justification for him to go get a knife and go after this man. And when he pleaded self-defense, he did not base it on the fight in the men's room with him doing something at a later date after that, even if it was matter of minutes.

Appellant contends that the instruction was improper since it decided a material issue of fact. *Roe v. United States*, 287 F.2d 435 (5th Cir.), *cert. denied*, 368 U.S. 824, 82 S.Ct. 43, 7 L.Ed.2d 29 (1961). We find this argument meritless. The instruction was merely an explanation to the jury of the law regarding the defense of "self-defense." Nothing in the instruction assumed any facts.

## V. *Admission of Extrinsic Evidence*

Shavers' supervisor testified that approximately nine months prior to the present incident he had instructed Shavers to serve bananas at a meal. Shavers allegedly replied in a "derogatory" manner and told the supervisor he had "better watch it." At the time of this conversation, Shavers was using a knife to slice grapefruit. Apparently, Shavers' conduct was sufficiently ambigu-

---

**6.** When the prosecution uses defendant's postarrest silence to impeach an exculpatory story offered by defendant at trial and the prosecution directly links the implausibility of the exculpatory story to the defendant's ostensibly inconsistent act of remaining silent, reversible error results even if the story is transparently frivolous. *See United States v. Luna*, 539 F.2d 417 (5th Cir. 1976); *United States v. Harp*, *supra* [536 F.2d 786].

When the prosecutor does not directly tie the fact of defendant's silence to his exculpatory story, *i. e.*, when the prosecutor elicits that fact on direct examination and refrains from commenting on it or adverting to it again, and the jury is never told that such silence can be used for impeachment purposes, reversible error results if the exculpatory story is not totally implausible or the indicia of guilt not overwhelming. *See United States v. Impson, supra* [531 F.2d 274 (5th Cir. 1976)].

When there is but a single reference at trial to the fact of defendant's silence, the reference is neither repeated nor linked with defendant's exculpatory story, and the exculpatory story is transparently frivolous and evidence of guilt is otherwise overwhelming, the reference to defendant's silence constitutes harmless error. . . .

547 F.2d at 1249–50.

ous to prompt the supervisor to ask Shavers if he was threatening him. Shavers' motion to strike this testimony as prejudicial was denied.

 The government argues that this evidence, while extrinsic, was admissible under Fed.R.Evid. 404(b). Evidence of an extrinsic offense can be admitted under Fed. R.Evid. 404(b) if it is determined that the evidence is relevant to an issue other than defendant's character. However, it must first be determined that the extrinsic evidence requires the same intent as the charged offense and that the jury could find that the defendant committed the extrinsic offense and second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice. These questions are within the discretion of the trial judge. *United States v. Beechum*, 582 F.2d 898, 911, 913 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).[7]

According to the government, this case falls squarely within the *Beechum* analysis since the extrinsic offense dealt with a threat by appellant which was relevant to intent. The same state of mind was required for the extrinsic offense as was required to perpetrate the charged offense of assault with a dangerous weapon.

Appellant argues that the admission of the extrinsic evidence violated Rule 404(b). He points out that in *Beechum* motive is defined as "the reason that nudges the will

and prods the mind to indulge the criminal intent." 582 F.2d 898, 911–12 n.15. Shavers questions how the alleged threat against his supervisor nine months before the alleged assault on Rolle demonstrates the criminal intent required for the latter offense.

We need not rule on this precise issue. Even if evidence of the extrinsic offense was relevant to appellant's intent in the present offense, the prejudicial impact far outweighed any probative value. *United States v. Turquitt*, 557 F.2d 464 (5th Cir. 1977). The evidence was highly prejudicial because it permitted the jury to infer that Shavers is a violent person with a propensity to use knives against people. Furthermore, the testimony of Thompson, who witnessed the alleged offense, cast doubt as to whether the extrinsic offense was actually committed, thus reducing any probative value of the evidence.[8] Because the probative value of the evidence was far outweighed by its prejudicial impact, the judge abused his discretion in not excluding the evidence.

We find that the errors committed deprived Shavers of his right to a fair trial.

REVERSED AND REMANDED.

---

**7.** In *Beechum* we stated:
> Where the evidence sought to be introduced is an extrinsic offense, its relevance is a function of its similarity to the offense charged. In this regard, however, similarity means more than that the extrinsic and charged offense have a common characteristic. For the purposes of determining relevancy, "a fact is similar to another only when the common characteristic is the significant one for the purpose of the inquiry at hand." Stone, *The Rule of Exclusion of Similar Fact Evidence: England*, 46 Harv.L.Rev. 954, 955 (1933). Therefore, similarity, and hence relevancy, is determined by the inquiry or issue to which the extrinsic offense is addressed.
> Where the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives

from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense.

582 F.2d at 911. *See also United States v. Smith*, 605 F.2d 839, 845–46 (5th Cir. 1979) and *United States v. Foshee*, 606 F.2d 111, 112 n.3 (5th Cir. 1979).

**8.** Thompson's testimony factually differentiates this case from *United States v. McMahon*, 592 F.2d 871, 873 (5th Cir.), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 289 (1979), where it was undisputed that appellant committed the extrinsic offense.