Russell JEWELL, Jr.,
Plaintiff, Appellant,

v.

ARCTIC ENTERPRISES, INC.,
Defendant, Appellee.

No. 86–1271.

United States Court of Appeals,
First Circuit.

Submitted July 31, 1986.
Decided Sept. 19, 1986.

Richard Y. Uchida, Paul A. Rinden and Rinden Professional Ass'n, Concord, N.H., on brief for plaintiff, appellant.

John A. Lassey, Michael R. Mortimer and Wadleigh, Starr, Peters, Dunn & Chiesa, Manchester, N.H., on brief for defendant, appellee.

Before CAMPBELL, Chief Judge, COFFIN and BOWNES, Circuit Judges.

PER CURIAM.

Plaintiff/appellant Russell Jewell, Jr., challenges on appeal the district court's refusal to ask or to allow him to ask particular questions of a jury panel. He challenges as well the district court's denial of his motion to inspect the jury questionnaires, made pursuant to the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 *et seq.*

Jewell sued Arctic Enterprises, Inc. (now Minstar) in tort after he sustained injuries as the result of a collision with a snowmobile manufactured by the defendant. Jewell filed a motion pursuant to 28 U.S.C. § 1861 *et seq.* several days before the voir dire in which he sought permission to inspect the jury questionnaires so that he could "make more informed choices about prospective jurors, based on age, educational background, occupations of spouses and place of employment." (R. Doc. 22) In a separate motion filed the same day, he requested the court to ask the jury panel three questions:

1.) Is any member of the jury panel of the opinion or belief that a person assumes the risk for any and all injuries suffered while riding a snowmobile, regardless of how such injuries occur?

2.) Has any member of the jury panel operated a snowmobile in the past, and if so, have you formed an opinion or belief that a person assumes the risk for any and all injuries suffered while riding snowmobiles, regardless of how such injuries occur?

3.) Is any member of the jury panel an owner of land over which snowmobiles [sic] operators ride, and if so, have you formed an opinion or belief that snowmobiles should not be ridden under any circumstances, or that a person assumes the risk for any and all injuries suffered while riding snowmobiles, regardless of how such injuries occur?

(R. Doc. 21). The court denied both motions.

At the voir dire, in addition to the "stock" questions (i.e., whether any juror knew an attorney, a party or a witness, and whether any juror had facts, information or an opinion about the case), the court asked the jury, en masse:

Do [sic] any of you have any strong feelings pro or con relative to the operation of snowmobiles?

If you were one of the parties in this case do you know of any reason why you would not be content to have the case tried by someone in your frame of mind?

Transcript, 12–13. The court asked as well whether any juror would be unable or unwilling to return a verdict based on the evidence, and whether there was any matter which might have some bearing on the potential juror's qualifications or which might prevent the return of a fair, impartial verdict. The record does not indicate that any juror responded to any of these questions.

The court struck two jurors for cause. The judge explained that he had not asked plaintiff's propounded questions because each was couched in the language of assumption of risk, which is not the law in New Hampshire. A panel was seated and each juror recited his name, address, occupation and spouses's occupation. After an off-the-record conference, the court excused eight more jurors, presumably as the result of counsels' peremptory challenges.

Jewell argues on appeal that:

it is common knowledge that certain members of the community, especially in snowbound New Hampshire, believe that any injury suffered on a snowmobile, under any circumstances, is the fault of the injured victim. In the view of these potential jurors, snowmobilers are no less than 'thrillseekers.' Other New Hampshire residents, who own acres of open land, resent snowmobilers because they criss-cross their land marring otherwise serene winter landscapes. They, too, share the belief that the snowmobil-er is to blame for any resulting injury, under any circumstances.

Appellant's brief, 5.

He insists that he needed the information solicited by his proposed questions in order to exercise intelligently his challenges for cause and peremptory challenges.

We address first the trial court's failure to ask the questions suggested by Jewell. The trial court has broad discretion in determining how best to conduct a voir dire. *Rosales-Lopez v. United States*, 451 U.S. 182, 188–89, 101 S.Ct. 1629, 1634–35, 68 L.Ed.2d 22 (1981); *Ristaino v. Ross*, 424 U.S. 589, 594–95, 96 S.Ct. 1017, 1020–21, 47 L.Ed.2d 258 (1976); *United States v. Medina*, 761 F.2d 12, 20 (1st Cir.1985); *cf. Art Press, Ltd. v. Western Printing Machinery Co.*, 791 F.2d 616 (7th Cir.1986).

■ We can discern no abuse of discretion in the district court's actions. The court's stated reason for rejecting the questions—that assumption of risk is not the law in New Hampshire—has not been challenged. The court's refusal to ask what would have been misleading questions is not erroneous. *Lodge v. Shell Oil Co.*, 747 F.2d 16, 19 (1st Cir.1984). These are matters primarily within the discretion of the trial judge, who did, in fact, inquire if the jurors had strong feelings pro or con the operation of snowmobiles. We are unable to discern any abuse of discretion in the court's handling of the voir dire on this issue.

■ Jewell argues next that the court's failure to grant his motion to release the jury questionnaires, made pursuant to 28 U.S.C. § 1861 *et seq.*, was an abuse of discretion because it denied him an intelligent basis on which to make peremptory challenges. Jewell had requested the questionnaires "to make more informed choices about prospective jurors, based on age, educational background, occupation of spouse, and place of employment.

The Jury Selection and Service Act was enacted primarily to ensure that "all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit

juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. *See United States v. Savides,* 787 F.2d 751 (1st Cir.1986). To further that objective, both criminal and civil litigants are given the opportunity to challenge compliance with the provisions of the Act. 28 U.S.C. § 1867(a)–(c). If a civil litigant files a motion and an affidavit attesting to facts which, if true, would constitute a substantial failure to comply, the litigant is entitled to "any relevant records and papers not public or otherwise available used by the jury commissioner or clerk, and any other relevant evidence." 28 U.S.C. § 1867(d). "The parties [are] allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion." 28 U.S.C. § 1867(f).

Jewell filed no motion and affidavit to indicate a substantial failure to comply with the provisions of the Act. (*See* R. Doc. 22.) Moreover, Jewell was informed before he exercised his peremptory challenges of each prospective juror's occupation, the juror's spouse's occupation and the juror's town of residence. The juror's age should have been fairly obvious from his or her appearance. With reference to the panel, then, Jewell had access to much of the information he sought by way of the questionnaires.

We do not think that the Jury Selection and Service Act grants counsel the right to inspect jury questionnaires solely to aid in the voir dire process. *See United States v. Price,* 573 F.2d 356, 360–61 (5th Cir.1978) ("certain phases of juror selection and qualifications are not covered by the Act. For example, the Act does not encompass [objections to the conduct of the] voir dire of the jury panel"). *Cf. Test v. United States,* 420 U.S. 28, 30, 95 S.Ct. 749, 750, 42 L.Ed.2d 786 (1975) (per curiam) (litigant who challenges, by motion and affidavit, exclusion of people with Spanish surnames, students and blacks from jury list has, under 28 U.S.C. § 1867(f), essentially an unqualified right to inspect jury lists); *United States v. Marcano-Garcia,* 622

F.2d 12, 18 (1st Cir.1980) (request for a continuance to submit affidavits and demographic data in support of motion to dismiss for violation of Constitution and Act and motion to inspect jury selection records were wrongfully denied for want of sworn statement evincing non-compliance with Act; litigant whose motion challenging jury selection is pending has an unqualified right to inspect records). Accordingly, we find no error in the district court's denial of the motion.

We have considered Jewell's other arguments and find them to be without merit. The judgment is affirmed.