Mee Sook SASAKI, Plaintiff–Appellee,

v.

Robert CLASS; JLW Produce,
Incorporated, Defendants–
Appellants,

Nationsbank; Provident Bank of Maryland; Mars Supermarkets, Incorporated;
Super Fresh Food Markets of Maryland,
Incorporated; Magruder's of Maryland,
Incorporated; Grand Union Company,
t/a Basics Food Warehouse, Garnishees.

Mee Sook SASAKI, Plaintiff–Appellant,

v.

Robert CLASS; JLW Produce,
Incorporated, Defendants–
Appellees,

Nationsbank; Provident Bank of Maryland; Mars Supermarkets, Incorporated;
Super Fresh Food Markets of Maryland,
Incorporated; Magruder's of Maryland,
Incorporated; Grand Union Company,
t/a Basics Food Warehouse, Garnishees.

Nos. 95–2077, 95–2191.

United States Court of Appeals,
Fourth Circuit.

Argued May 7, 1996.

Decided Aug. 12, 1996.

**ARGUED:** Morton A. Sacks, McGuire, Woods, Battle & Boothe, L.L.P., Baltimore, Maryland, for Appellants. George Edwin Golomb, Baltimore, Maryland, for Appellee. **ON BRIEF:** Jeffrey G. Cook, Andrea Pierce Yalof, McGuire, Woods, Battle & Boothe, L.L.P., Baltimore, Maryland, for Appellants.

Before WIDENER, MURNAGHAN, and MOTZ, Circuit Judges.

No. 95–2077 affirmed in part, reversed in part, and remanded; No. 95–2191 vacated and remanded by published opinion. Judge MOTZ wrote the opinion, in which Judge MURNAGHAN joined. Judge WIDENER wrote a concurring and dissenting opinion.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

These cross-appeals arise from a jury verdict in favor of a plaintiff on her claims against her former employer for sexual harassment and assault and battery. Because in closing argument plaintiff's counsel improperly referred to the federal statutory "cap" on non-economic damages that could be awarded, and because the jury's damages award indicates that this improper reference substantially influenced the jury's calculations, we reverse and remand for a new trial on damages. We affirm the jury's verdict as to liability.

## I.

Mee Sook Sasaki brought this suit against her employer, JLW Produce, and its president, Robert "Bobby" Class, (collectively, the "Company") pursuant to 42 U.S.C. § 1981a, alleging that Class had sexually harassed her for several years. Sasaki also alleged that Class had repeatedly assaulted and battered her in violation of Maryland law.

Sasaki began working for JLW Produce in 1986. At the time she was single and in her twenties. She entered into a brief relationship (about three months) with Class, also in his twenties. Class ran JLW Produce with the help of his father, who owned a larger wholesale produce company. Sasaki testified that after she ended their relationship, Class's attitude toward her at work changed. Although much of the testimony in the case was hotly disputed, there was abundant evidence that over the ensuing years, even though both parties had subsequently married, Class—at the workplace and during working hours—on numerous occasions made sexual comments to or about Sasaki, touched and rubbed her body, propositioned her, and physically molested her. Sasaki asserted that his behavior ultimately led her to quit her job in February, 1994. Class denied Sasaki's charges, asserting that Sasaki was the sexually aggressive party and that she had quit after a dispute involving the cashing of his paycheck.

The jury apparently credited Sasaki's version of the events and returned a verdict in her favor, awarding her $61,250 on the sexual harassment claim, $150,000 on the state law claims, and $65,000 in punitive damages—for total damages of $276,250. Sasaki then requested that the court grant her attorney's fees and costs. The court declined on the ground that the damages award in Sasaki's favor was "generous," and that adding an award for attorney's fees would be "unjust."

The Company appeals on numerous grounds. Sasaki cross-appeals, contending that the court abused its discretion in denying her attorney's fees.

## II.

We address first the Company's strongest challenge. The Company contends that the district court erred in permitting Sasaki's attorney to mention in closing argument the damages "cap" contained in 42 U.S.C. § 1981a.

As part of the Civil Rights Act of 1991, Congress imposed caps on the amount of "compensatory damages" plaintiffs may recover for non-economic damages, such as emotional pain and mental anguish, in sexual harassment claims. 42 U.S.C. § 1981a(b)(3). These caps vary according to the size of the employer. In this case, because JLW Produce has seventy-five employees, the statute limits Sasaki to recovering $50,000 in non-economic damages from the Company. *See* 42 U.S.C. § 1981a(b)(3)(A). The statute further directs that "[i]f a party seeks compensatory or punitive damages under this section[,] . . . the court shall not inform the jury of the limitations [on damages] described in subsection (b)(3) of this section." 42 U.S.C. § 1981a(c)(2).

During closing argument, Sasaki's counsel discussed the damages she sought, as follows:

[PLAINTIFF'S COUNSEL]: Let's talk about compensation. . . . On the sexual harassment claim, you can compensate her for her back pay she lost after she quit. You will get a little form, this comes to precisely $10,750.00. You can also compensate her for the interest on the back pay. . . . This comes to an additional $1,075.00, so this brings the total for back pay and interest to $11,825.00.

Now, for sexual harassment *Congress* realized that when you have sexual harassment there is a lot of emotional pain. . . . So you *can award* damage for that, financial damage for emotional pain, suffering, inconvenience, mental anguish. . . . You *can award her up to $50,000* in compensatory damages for sexual harassment as to all those things. That is in addition to the $11,825.00.

[DEFENDANTS' COUNSEL]: Objection to that.

COURT: Overruled.

[PLAINTIFF'S COUNSEL]: Okay. So under Count One for sexual harassment

you *can award* a total of $61,825.00 against Robert Class and JLW Produce.... [The Civil Rights Act of 1991] provided for compensatory damage in addition to the back pay ... and I suggest to you respectfully that Robert Class caused Mrs. Sasaki enough mental anguish ... to warrant *the full compensatory damages* of $61,825.00 under Count One....

Now, in her claims for assault and battery you can and should award her compensation for all assaults and batteries taking place beginning October 1993 through February 4, 1995(sic).

...

And *the law is generous here.* You *can award* her up to $500,000.00 for each battery.... I am willing ... to leave it to your judgment, you are mature people, but you *can award her up to $500,000.00* every time there was an offensive touching.

(emphasis added).

### A.

Sasaki offers three arguments in response to the Company's assertion that her counsel's references to the cap in his closing argument were improper.

▆ First, she claims that because § 1981a(c)(2) states only that the "*court* shall not inform the jury" of the damage cap, the statute does not prevent attorneys from doing so. The statute does literally prohibit only the "court" from informing the jury of the caps; however, Congress clearly intended this restriction to prohibit anyone from bringing the caps to the jury's attention. Although attorneys may comment at trial on the law as it applies to the case at hand, ultimate responsibility for instructing the jury as to the applicable law lies with the court. *See Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir.1986) ("it is the responsibility—and the duty—of the court to state to the jury the meaning and application of the appropriate law"). Given that this ultimate responsibility lies with the court, the statute's explicit preclusion of the court from mentioning the caps was plainly designed to remove them altogether from the jury's consideration.

The limited legislative history of § 1981a(c)(2) supports the conclusion that Congress intended that juries not be informed—by anyone—of the damage caps. During debate on the bill, Senator Danforth, one of its chief proponents, explained in an interpretive memorandum: "The Bill specifically provides that the jury shall not be informed of the existence or amount of the caps on damage awards. Thus, no pressure, upward or downward, will be exerted on the amount of jury awards by the existence of the statutory limitations." 137 Cong. Rec. S15,484 (daily ed. Oct. 30, 1991). Obviously, such pressure would not be removed if the statute were interpreted to restrict only the judge and not attorneys from informing the jury of the damage caps.

Moreover, a restriction that applied only to the court, and not counsel, would make no sense. Under Sasaki's interpretation of the statute, attorneys could debate the appropriate cap limits in their closing arguments, while the court would be prohibited from correctly informing the jury as to the applicable law. Accordingly, to avoid such a result, and consistent with Congress's intent to remove the caps from the jury's consideration, the restriction on informing the jury of the caps must apply to attorneys as well as to the court. *Cf. Tamplin v. Star Lumber & Supply Co.*, 251 Kan. 300, 836 P.2d 1102, 1110 (1992) (Addressing a similarly phrased Kansas statute, the Kansas Supreme Court found that although the statute specifically restricted the court from informing the jury, "the legislative intent would be frustrated if counsel were allowed to inform the jury of the cap while the trial court could not.").

▆ Nor is Sasaki's second argument any more persuasive. She contends that the Company "opened the door" to her counsel's statement by portraying her as a "greedy person," seeking "millions of dollars" in damages. Sasaki argues that she was entitled to mention the cap in order to "meet [the] distorted image of greed" that arose from the Company's "contention" that she was seeking millions of dollars in damages. An obvious problem with Sasaki's argument is that she was, in fact, seeking millions of dollars in her complaint. This substantially weakens her

claim that she was entitled to introduce the cap to "meet" the Company's "contention" that she was seeking millions in damages.

More significantly, Sasaki's mention of the cap did not work to "meet" or "offset" the inference that she was greedy. Instead, her counsel mentioned the $50,000 cap contained in the federal statute and then explicitly advised the jury that it could still award her millions of dollars in damages on her state law claims. As such, the mention of the cap did nothing to dispel the Company's characterization of Sasaki as greedily seeking millions in damages—it merely informed the jury (improperly) of the manner in which it could structure its verdict to avoid the cap and still award her millions of dollars.

■ Finally, Sasaki argues that even if the reference to the cap was error, the error did not harm or prejudice the Company and so does not require reversal. The § 1981a caps were enacted in apparent response to a concern about runaway verdicts, in which juries purportedly awarded plaintiffs excessive damages. As previously noted, the statute prohibits the court from informing the jury of the caps to ensure that the jury does not feel pressure to structure or adjust verdicts "upward or downward" to account for the caps. Restrictions on informing the jury of caps are enacted because "[l]egislators likely fear that juries would award the maximum or would otherwise adjust their awards if told of the statutory limit." *See* Colleen P. Murphy, *Determining Compensation: The Tension Between Legislative Power and Jury Authority,* 74 Tex. L.Rev. 345, 347 n. 8 (1995).

In this case, there is strong reason to believe that the jury did precisely this, adjusting its award to account for the federal damages cap. All of the conduct that formed the basis for Sasaki's state claims also provided the basis for her federal claims. Sasaki alleged, and the jury found, that Class sexually harassed her at work through various means, including, but not limited to, repeated assaults and batteries. All of the (state) assaults and batteries were also acts

of (federal) sexual harassment. By requesting non-economic damages on both the federal and state claims, Sasaki asked for compensation for the same injury arising from the same conduct encompassed within the two separate claims. The jury ultimately awarded her $50,000 for the mental anguish and suffering that resulted from all of the instances of sexual harassment, including the assaults and batteries, and then awarded her $150,000 for the anguish and suffering caused by the assaults and batteries alone.

■ The jury therefore appears to have faithfully followed Sasaki's counsel's directions with regard to the award. In awarding a significantly larger amount of damages for the "lesser included" state conduct and injury, the jury almost undoubtedly adjusted its award to account for the federal cap. Although the basis for the jury's decision can, of course, never be known to a certainty, when a jury's damages award itself indicates so strongly that the error substantially influenced the jury's verdict, the error cannot be dismissed as harmless under Rule 61 of the Federal Rules of Civil Procedure. *See Hallberg v. Brasher,* 679 F.2d 751, 758 (8th Cir.1982) (error must be assessed in relation to the damages award) (citing *Kotteakos v. United States,* 328 U.S. 750, 764, 66 S.Ct. 1239, 1247, 90 L.Ed. 1557 (1946)).

The district court's admonition to the jury that statements and arguments "of counsel are not evidence," did not "cure" the error resulting from counsel's improper mention of the cap. Even if the jurors properly obeyed this instruction, as we assume they did, this would not have prevented them from following the improper *legal* suggestion of Sasaki's counsel—to award limited damages on the federal claim and "more generous" damages on the state claims to avoid the federal cap. The jury here likely reacted in precisely the manner that Congress specifically feared, and which it attempted to preclude through the enactment of 42 U.S.C. § 1981a. Accordingly, we cannot conclude with any assurance that the error was harmless.[1]

---

1. Sasaki additionally appears to maintain that her counsel's closing argument could reasonably be interpreted as requesting $50,000 as "fair relief," and not as indicating to the jury that the

$50,000 cap existed. However, counsel's repeated statements as to what the jury "can award" Sasaki, his reference to what "Congress realized," and his comment that state *law* is

### B.

■ Having determined that the reference to the cap was not harmless error, we must now decide whether to remand this case for a new trial as to liability and damages or for a trial limited to the issue of damages. Neither party has directly addressed this question. Nevertheless, Fourth Circuit precedent plainly provides that errors relating to damage awards do not require reversal of liability determinations if the two issues are not inextricably interwoven. *See, e.g., Great Coastal Express, Inc. v. International Bhd. of Teamsters*, 511 F.2d 839, 846 (4th Cir. 1975), *cert. denied*, 425 U.S. 975, 96 S.Ct. 2176, 48 L.Ed.2d 799 (1976).

The jury in this case was given a special verdict form. The form required the jury to set forth separately its findings as to whether Class sexually harassed, assaulted, or battered Sasaki. The form also required the jury to determine whether Class's conduct was egregious enough to warrant punitive damages. Finally, the form required the jury to assess damages. The jury specifically found that Class *did* sexually harass, *did* assault and batter Sasaki, and that his conduct *did* warrant punitive damages. The jury then made its damages assessment. Although we must reverse the damages assessment due to the error in Sasaki's counsel's reference to the cap on damages, this error had no effect on the jury's findings as to liability and to the *propriety* of punitive damages. Thus, we need only remand for a new trial on the issue of damages. *See Great Coastal Express*, 511 F.2d at 846 ("where there is no substantial indication that the liability and damage issues are inextricably

interwoven ... a second trial limited to damages is entirely proper"); *Hallberg*, 679 F.2d at 758 (same); *see also Cunningham v. M-G Transp. Services, Inc.*, 527 F.2d 760, 762 (4th Cir.1975) (reversing for retrial on damages alone).[2] Since reversal of the damages award does not mandate reversal as to liability or the propriety of punitive damages, we must now consider the Company's challenges to those portions of the verdict.

### III.

■ The district court refused to ask prospective jurors during voir dire whether they, or any of their immediate family members or close friends, had experienced or witnessed sexual harassment in the workplace. The Company contends that the court's refusal denied it the right to an unbiased jury.

■ The district court enjoys broad discretion in deciding the questions to ask venire members during voir dire. *See Rosales–Lopez v. United States*, 451 U.S. 182, 189, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981) ("federal judges have been accorded ample discretion in determining how best to conduct the voir dire"). A voir dire "that has the effect of impairing the defendant's ability to exercise intelligently his challenges is ground for reversal, irrespective of prejudice." *United States v. Rucker*, 557 F.2d 1046, 1049 (4th Cir.1977). But a "reasonable restraint of questioning" is not reversible error absent prejudice, *Langley v. Turner's Express, Inc.*, 375 F.2d 296, 297 (4th Cir. 1967), and in these circumstances the "burden is on the defendant to show that the trial court's conduct of voir dire prejudiced him,

---

more "generous" in permitting an award of $500,000, negate any argument that the jury was not informed of the cap. Sasaki also contends that the error should be considered harmless because she could conceivably have asked the jury, without mentioning the caps, for $50,000 on the federal claim and $150,000 on the state claims. *But see Mosser v. Fruehauf Corp.*, 940 F.2d 77, 82 (4th Cir.1991) (cautioning courts to restrict counsels' attempts to request specific amounts from juries, and noting the general insufficiency of "boiler-plate" instructions to the jury not to consider counsels' requests as evidence). Specifically requesting the cap amount without explicitly mentioning the cap would violate the spirit (if not letter) of the law. More-

over, Sasaki's attorney did more than this, he repeatedly referred to maximum amounts permitted by law, i.e. maximum amounts "you can award"—and therefore violated both the spirit and letter of the law.

2. Because the appropriate punitive sanction bears a strong relation to the amounts paid in compensation, the amount of punitive damages awarded was inextricably entwined with the compensatory damages award. Accordingly, we remand the punitive damages award for a new trial along with the compensatory damages award.

and led to an unfair trial." *United States v. Griley,* 814 F.2d 967, 974 (4th Cir.1987) (citing *United States v. Malloy,* 758 F.2d 979, 982 (4th Cir.), *cert. denied,* 474 U.S. 1009, 106 S.Ct. 535, 88 L.Ed.2d 465 (1985)). In other words, the burden is on the party challenging the trial court's conduct of voir dire to establish that the voir dire questioning did not permit intelligent challenges of the jury, and therefore constituted an abuse of the court's discretion.

Although a trial court's discretion is "not without limits," it is a rare case in which a reviewing court will find error in the trial court's conduct of voir dire. *See* 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 2482 at 116 & n. 11 (1995) (noting that generally "appellate courts will decline to find error" in voir dire questioning and citing cases); *see also United States v. Nash,* 910 F.2d 749, 753 (11th Cir.1990) ("Because of its immediate contact with the voir dire proceeding, the district court is in a far superior position to evaluate particular voir dire questions than is the court of appeals, which can only rely on the cold record in conducting its review.").

Both Sasaki and the Company proffered numerous voir dire questions. The district court appears to have exercised its discretion and not directly adopted any of these often duplicative questions. Instead, the court engaged in an extensive voir dire of its own devising. After the court had completed its questioning, it asked the parties if they requested "any additions to the voir dire." The Company responded that it wanted the following supplemental questions asked of the jurors:

> Have you or any of your immediate family members or close personal friends experienced unwelcome sexual advances in the workplace? If so, did you ever complain of such treatment and to whom? Was the matter resolved to your satisfaction?
>
> Do you believe you have ever witnessed sexual harassment at the workplace? If so, what type of treatment did they receive? Would the feelings you felt for this person cause you to side with or be partial to any of the parties in this case?

The Company has not cited any case involving questions similar to those at issue here (i.e., whether the jurors, or their immediate families, had experienced or witnessed sexual harassment), nor have we found any. Indeed, only a few courts appear to have considered appeals from a trial court's failure to propound questions as to jurors' experiences with facts similar to those involved in the civil cause of action to be decided by them. In a personal injury action brought against the Ford Motor Co., the Seventh Circuit held it error not to ask jurors if they or members of their families had ever been involved in a rear-end collision or ever owned a Mercury Comet. *See Fietzer v. Ford Motor Co.,* 622 F.2d 281, 286 (7th Cir.1980). However, the trial court in that case asked only a few voir dire questions, which may not have signaled to jurors that they should disclose this or related information. Similarly, in *Art Press, Ltd. v. Western Printing Mach. Co.,* 791 F.2d 616, 619 (7th Cir.1986), the Seventh Circuit held a trial court erred in refusing to ask anything other than "stock" voir dire questions (i.e., name, address, employer, familiarity with parties or counsel, etc.).[3] More recently that same court held that a district court presiding in a criminal case had *not* abused its discretion in refusing to ask questions about jurors' personal experiences with customs procedures, propounded by a defendant accused of customs violations, because the court had asked a number of other questions designed to elicit similar information. *United States v. $94,000 in United States Currency,* 2 F.3d 778, 788 (7th

---

**3.** Likewise, although the refusal to ask jurors if they or members of their family have been victims of a crime like that charged has been held to be error, *see United States v. Shavers,* 615 F.2d 266, 268 (5th Cir.1980); *United States v. Poole,* 450 F.2d 1082, 1084 (3d Cir.1971), in each of these cases, there is no indication that the jurors were asked other questions that might have obtained this or related information. *See Shavers,* 615 F.2d at 268; *Poole,* 450 F.2d at 1083–84. Moreover, it has also been held that a trial court did not err in refusing to ask if jurors or their family members were victims of a crime similar to that at issue, if the questions that were asked "covered the request" in another manner. *See State v. Lopez,* 134 Ariz. 469, 657 P.2d 882, 884 (App.1982).

Cir.1993); *see also Jewell v. Arctic Enters., Inc.,* 801 F.2d 11, 12 (1st Cir.1986) (no abuse of discretion in refusing to ask tort plaintiff's specific questions as to jurors' experiences and attitudes toward snowmobiles, in part because judge asked other questions concerning related information).

In the case at hand, after briefly explaining the facts, the trial court asked the following voir dire questions, among others:

Have you or members of your immediate family ever participated in a lawsuit either as a party, witness who was called to testify, or in some other capacity? In other words have you filed any claims, have any claims been filed against you, claims of any kind?

I referred very briefly to the facts of this case, allegations of *sexual harassment in the work place* .... Do any of you know anything about the facts of this case ...?

Because *of the nature of the charges,* do you have any opinion about the case, you may think that they are proper, it should not be, anything that would prevent you again from returning a verdict based solely upon the evidence and my instructions on the law?

If you were one of the parties in this case, either the plaintiff or the defendant, do you know of any reason you would not be content to have the case tried by someone in your present frame of mind?

Have any of you ever been employed, or are you now employed as a supervisor or manager, in any organization with whom you have worked?

I did indicate in the question whether any of you have ever been involved in any litigation of any kind. Let me ask a little more specific question on the issue, that is, whether any of you have ever filed, *you or members of your immediate family, ever filed a claim with the Equal Opportunity Community Commission, or any other agency having jurisdiction over sexual harassment cases?*

Now have any of the members of the panel been the *victim of an assault or battery at any time?*

Have any members of the panel ever participated in a *seminar or class or received training about sexual harassment in the work place?*

I have asked a number of questions of you about your background, your experience, about the nature of this case, is there anything that as a result of that would prevent you in any way from returning a verdict in this case based solely upon the evidence which you hear and in instructions on the law as I would give it to you?

(emphasis added).

In our view, these questions were likely to lead to the revelation of any prejudice or bias that the jurors may have held. Because several of the general questions focused on harassment claims or assaults and batteries, it was repeatedly, albeit implicitly, emphasized to the jurors that this sort of experience should be disclosed. The questions concerning lawsuits generally, and sexual harassment and assault and battery claims specifically, would, we believe, have led a juror to disclose experience with sexual harassment. We note, for example, that after there had been no response to the inquiry as to whether any juror had been a victim of "assault and battery at any time," one juror volunteered in open court, "what about abuse" and explained that he had been the victim of child abuse. In the context of the other questions, the court's generalized questions as to experiences that might have biased the jurors established the sufficiency of the court's questioning. *See United States v. LaRouche,* 896 F.2d 815, 829–30 (4th Cir.) (general questions may be sufficient in context), *cert. denied,* 496 U.S. 927, 110 S.Ct. 2621, 110 L.Ed.2d 642 (1990).

Accordingly, the district court did not abuse its discretion in failing to ask further questions regarding the prospective jurors' experiences with sexual harassment. Indeed, the Company itself concedes that the court's question regarding assault and battery, as a legal matter, "covered" aspects of sexual harassment. Although we agree that it might have been preferable for the trial court to have explained these terms to make sure that the jurors understood that they should reveal experiences with sexual harassment experiences, as a whole, we find the court's voir dire adequately covered the per-

sonal experiences that may have biased the jurors. Thus, it was unnecessary for the court to go to any greater lengths to ensure that jurors revealed their potential prejudices and would decide the case based on the evidence alone. *See Mu'Min v. Virginia,* 500 U.S. 415, 431, 111 S.Ct. 1899, 1908, 114 L.Ed.2d 493 (1991) (stating that trial court's voir dire must "cover" the subject of jurors' possible bias, but that trial courts need not adhere to a specific method of questioning).

## IV.

■ The Company also asserts that the district court committed several evidentiary and instructional errors. These claims are reviewed for abuse of discretion. *See, e.g., United States v. Heater,* 63 F.3d 311, 320 (4th Cir.1995) (evidentiary errors), *cert. denied,* —— U.S. ——, 116 S.Ct. 796, 133 L.Ed.2d 744 (1996); *Teague v. Bakker,* 35 F.3d 978, 985 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1107, 130 L.Ed.2d 1073 (1995) (instructional errors).

### A.

■ The Company's first evidentiary challenge is to questions posed to a defense witness during cross-examination. The witness had testified that Class would not permit pictures of women in bathing suits in the workplace because Class was "real old-fashioned." This comment permitted Sasaki to explore whether Class was in fact "old-fashioned." Thus, the court did not abuse its discretion in permitting Sasaki's counsel to inquire into specific instances in which Class's conduct might not be considered "old-fashioned." *See United States v. Wellons,* 32 F.3d 117, 120 n. 3 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1115, 130 L.Ed.2d 1079 (1995). The Company's argument that the witness's comment only opened the door to questions concerning Class's conduct in the workplace is overly constricted and meritless. The Company's evidentiary challenges to other questions posed by Sasaki's counsel are without merit either be-

cause the court sustained the Company's objections or because the answers were nonprejudicial.

### B.

■ As to the asserted instructional errors, the Company initially contends that the district court erred in instructing the jury that "an employer is not protected from liability for sexual harassment merely because the employer has a grievance procedure, and the plaintiff elected not to pursue the grievance procedure." The Company does not complain that this instruction misstates the law. Indeed, it concedes that this language accurately paraphrases language in this court's decision in *Martin v. Cavalier Hotel Corp.,* 48 F.3d 1343, 1350–51 (4th Cir.1995). Nevertheless, the Company insists that the instruction was inapplicable to this case and caused prejudice. The Company maintains that the *Martin* instruction was irrelevant because JLW Produce never contested its liability for Class's conduct. However, the Company's decision not to proffer any argument at trial concerning JLW Produce's liability did not relieve Sasaki from the burden of establishing a basis for· imposing liability on JLW Produce for its employee's conduct. *See Swentek v. USAIR, Inc.,* 830 F.2d 552, 557 (4th Cir.1987).

■ Moreover, even if the instruction was irrelevant, it did not cause any prejudice to the Company. The Company maintains that the instruction foreclosed the jury from considering Sasaki's failure to utilize the grievance procedures in assessing her credibility. But the instruction did no such thing—it merely informed the jury that JLW Produce was not *relieved* from liability (i.e., Sasaki's claim was not barred) due to the existence of the procedures. This is an accurate statement of the law, *see Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986), and did not indicate to the jury that it should not consider Sasaki's failure to use the procedures in assessing her credibility.[4]

---

4. Even Sasaki's counsel reminded the jurors that they should consider the fact that the company had a harassment policy and that Sasaki had not

used it, "just like any other fact in the case," but should be aware that the company *"can* be held libel (sic) even if the company has a policy and

Additionally, the Company argues that the district court erred in rejecting several of its proposed jury instructions. The Company does not challenge the accuracy of the instructions the court gave but contends that the instructions were not as complete as the Company would have liked. In such a case, the "test of adequacy of instructions ... is simply the practical one of whether the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." *Spell v. McDaniel*, 824 F.2d 1380, 1395 (4th Cir.1987), *cert. denied*, 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988). "A set of legally accurate instructions that does not effectively direct a verdict for one side or the other is generally adequate." *Hardin v. Ski Venture, Inc.*, 50 F.3d 1291, 1294 (4th Cir.1995).

The district court instructed the jury: "Harassment that reasonably could and actually does create a hostile working environment may create a cause of action under [federal law]. Harassment is determined by looking at the totality of the circumstances in this case...." The Company asked the court to elaborate on the factors the jury should consider in determining whether the "circumstances" created a hostile environment. Four of the circumstances the Company offered were taken directly from the Supreme Court's opinion in *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22–23, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). However, in *Harris*, the Court did not state that a jury was *required* to consider these four circumstances or that each of the circumstances had to be present for a plaintiff to prevail. Instead, the Court held that there was no "mathematically precise test," and that *all* circumstances must be considered. *Id.* at 22–23, 114 S.Ct. at 371. Because the

law requires consideration of *all* the circumstances involved in a sexual harassment claim, the district court did not abuse its discretion in failing to list explicitly certain circumstances that could be considered.

Finally, the Company maintains that the court erred in failing to instruct the jury that "sporadic incidents" were insufficient to create a hostile work environment and that "mere epithets" that generate "offensive feelings" could not support a sexual harassment claim. Again, such instructions may accurately state the law, but again the district court did not abuse its discretion in refusing to give them. These matters are part of the totality of the "circumstances" about which the court instructed the jury. As such, there was no abuse in failing to instruct further on sporadic incidents or epithets. *See Hardin*, 50 F.3d at 1294 ("By no means are [district courts] required to accept all the suggested instructions offered by the parties."). Nor did the court's refusal to adopt the Company's instructions deny the Company the opportunity to present to the jury its "defense theory." The Company was free to, and did, emphasize in closing argument the "circumstances" of the case that it believed established that sexual harassment did not occur.

Moreover, it must be remembered that the jury found Class guilty of assaulting and battering Sasaki, and the circumstances of the harassment egregious enough to merit punitive sanctions. Therefore, any error in failing to further elaborate on the harassment instruction was surely harmless in light of these findings (e.g., the battery verdict establishes that the jury necessarily found more than "mere epithets"). *Cf. United States v. Forbes*, 64 F.3d 928, 935 (4th Cir. 1995) (where jury necessarily made appropriate findings, any error in adequately instructing the jury is harmless).[5]

the employee doesn't report it under the policy." (emphasis added).

5. The Company also claims the court erred in failing to inform the jury, after the court gave its damages instruction, that simply because the court gave the instruction did not indicate that the court sided with Sasaki. At the beginning of its instructions, however, the court told the jury that it alone was responsible for finding the facts and that nothing the court had said (with respect to legal instructions, etc.) should be interpreted as indicating the court's opinion as to the facts of the case. The failure to further clarify the issue with respect to damages was not an abuse of discretion.

## V.

The Company raises other issues with respect to the jury's damages award. Because we must remand the award for a new trial, we need not address these challenges.

■ Similarly, we need not extensively address Sasaki's cross-appeal as to attorney's fees. The district court's refusal to award attorney's fees because of the "generous award" of damages that Sasaki received was error; this is not a proper rationale for denying an award of attorney's fees. If a plaintiff's relative lack of success in obtaining damages is grounds for reducing or denying attorney's fees, *see Farrar v. Hobby*, 506 U.S. 103, 114–15, 113 S.Ct. 566, 574–75, 121 L.Ed.2d 494 (1992), then surely success is not also grounds for denying an award of fees. In any event, because this case must be remanded for a new trial as to damages, the basis for the district court's denial of attorney fees no longer exists. Accordingly, the decision as to appropriate attorney's fees is vacated and should be reconsidered on remand.

In sum, the judgment as to the Company's liability and as to the propriety of punitive damages is affirmed, the damages award is reversed, the attorney's fees decision is vacated. The case is remanded for a new trial as to damages and reconsideration of the attorney's fees award.

No. 95–2077—*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.*

No. 95–2191—*VACATED AND REMANDED.*

WIDENER, Circuit Judge, concurring and dissenting:

While I concur in all of the opinion except part III, my disagreement with that part leads to my conclusion that the judgment of the district court should be vacated and the case remanded for a new trial. So I must respectfully dissent from the result.

This case was about sexual harassment in the workplace and nothing else. That is acknowledged by the majority as it relates the correct facts that there was evidence that the plaintiff, following a broken love affair with Class, had been subjected by Class, her superior, on numerous occasions, to sexual comments to or about herself; the touching and rubbing of her body; being propositioned; and being physically molested, all of this at the workplace and during working hours.

The relevant part of the questions the defendants sought to have the court ask the jury are as follows (see op. at 239):

> Have you or any of your immediate family members or close personal friends experienced unwelcome sexual advances in the workplace? If so, did you ever complain of such treatment and to whom? Was the matter resolved to your satisfaction?

> Do you believe you have ever witnessed sexual harassment at the workplace? If so, what type of treatment did they receive? Would the feelings you felt for this person cause you to side with or be partial to any of the parties in this case?

As the majority correctly recognizes, in *United States v. Shavers*, 615 F.2d 266 (5th Cir.1980), the court reversed because in a prosecution for assault with a deadly weapon involving a fight with a knife in the possession of the defendant, the court refused to ask questions of the jury as to whether they or any of their relatives or friends had been the victim of a crime and, if so, to state "the nature of the crime" and "whether a gun, knife or other weapon was used," and also whether they or any of their relatives or friends had "suffered from any serious lacerations" and how suffered.

In reversing, the court reasoned that "[c]ertainly, a juror who has been the victim of a crime involving a knife or gun or who has suffered lacerations in an altercation might well be prejudiced against one charged with assault with a deadly weapon." 615 F.2d at 268. Additionally, the court reasoned that "[a]ppellant's proposed questions were 'reasonably necessary to enable the accused to exercise his peremptory challenges' and 'pertinent to the inquiry.' " 615 F.2d at 268.

In *United States v. Poole*, 450 F.2d 1082 (3rd Cir.1971), in a prosecution for bank rob-

bery while armed with a handgun, the court reversed the conviction because the district court would not ask of the jurors the question "[h]ave you or any member of your family ever been the victim of a robbery or other crime." In reversing, the court reasoned "[i]f we were to assume, *arguendo,* the demonstrated presence of a juror who had once been a robbery victim, it would be difficult to hold that such a juror was capable of objectivity." 450 F.2d at 1084.

As *Poole* notes, that question is included in the bench book for district judges, which at least indicates the wide-spread recognition of such an inquiry.

In my opinion, if any of the jurors had "experienced unwelcome sexual advances in the workplace" or had "witnessed sexual harassment in the workplace," specific inquiries sought by the defendants, that information was at least very relevant in exercising the defendants' peremptory challenges, not to mention any disqualification for cause of the jurors involved.

I suggest that the questions the district court asked the jurors in the case at hand talked all the way around the proper question without ever reaching it. The precise subject at hand, sexual harassment in the workplace, was not the subject of questioning, although requested, and although everyone in the courtroom knew what the case was all about at the time.

No reason suggests itself, and none is advanced, why these civil defendants are entitled to any less of a fair trial than were the criminal defendants in *Poole* and *Shavers.*