[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11439
_____

D.C. Docket No. 0:16-cr-60264-RNS-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

PATRICK ANTCZAK,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 9, 2018)

Before ROSENBAUM, HULL, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Following a jury trial, Patrick Antczak was convicted of attempting to entice

a minor into sexual relations in violation of 18 U.S.C § 2422(b).  He contends that

the district court committed several pretrial and trial errors that require reversal of his conviction. He also asserts that the sentence the district court imposed was too long, and its post-prison terms were too constricting. After careful consideration and for the reasons that follow, we affirm.

## I.

On September 22, 2016, a grand jury indicted Antczak for attempting to persuade, induce, entice, or coerce a minor to engage in sexual activity, in violation of 18 U.S.C § 2422(b). Antczak pled not guilty, contending he lacked the requisite intent because he did not really believe a minor would be involved.

At its core, this case arises out of a dragnet that the Federal Bureau of Investigation ("FBI") created to uncover adults using the internet to troll for ways to have sexual relations with minors. That dragnet ensnared Antczak. At trial, the Government had to prove that (1) Antczak acted with a specific intent to persuade, induce, entice, or coerce a minor to engage in unlawful sexual activity, and (2) he took a substantial step toward the commission of the offense. *See United States v. Murrell*, 368 F.3d 1283, 1286 (11th Cir. 2004). The Government sought to do so through three witnesses and through evidence consisting of a number of sexually explicit messages that Antczak exchanged with Matthew Fowler, an undercover FBI agent.

2

Specifically, at trial, Fowler testified that in August 2016, he placed an advertisement on Craigslist's "casual encounters" section, implying that he was a "dirty dad"—a dad who was engaged in incest with his nine-year-old daughter "Samantha"—and was looking for others who might be interested in having sexual relations with her as well. Fowler testified that Antczak responded to the inquiry shortly thereafter, beginning about a month of communications between them.

Much of Fowler's remaining testimony consisted of Fowler's reading of the over 500 messages he had exchanged with Antczak through the online messenger application "Kik." In those messages, Antczak expressed a desire to have sex with "Samantha" because he was "into incest/weird stuff" and "would like to try" having sex with a young child. Antczak also engaged in graphic communications about the manner in which he planned to have sex with "Samantha," communications in which he instructed "Samantha" on how to masturbate, and communications with "Samantha" in which he promised to bring her an iTunes gift card in exchange for sex. Following these communications, Fowler arranged for a meeting between Antczak and "Samantha" at a hotel in Sunrise, Florida.

Fowler testified that on September 13, 2016, Antczak arrived at the pre-arranged hotel rendezvous, carrying a condom that Fowler had instructed him to bring, as well as the iTunes gift card that he had promised "Samantha." Once he

3

spotted Antczak in the hotel's parking lot, Fowler, along with Agent Latasha Humphrey, apprehended Antczak.

Antczak's defense at trial was that he thought his discussions with "Samantha" and her "father" were "fantasy talk[s]" because he did not really believe a minor would be involved. Since Antczak did not testify, he sought to develop this defense by cross-examining Fowler. For example, defense counsel showed Fowler messages—also recovered from Antczak's phone—between Antczak and a person identified as "Angela Mikael," who was a man masquerading online as a young girl. The messages between "Angela" and Antczak ended abruptly when "Angela" revealed that she was a man. According to Antczak, when he told "Angela" that he "figured" that she was really a man, it demonstrated that he was not sexually interested in minors but only in adults roleplaying as minors.

To rebut this defense, the Government presented statements Antczak made to FBI agents after they arrested him, evidence gleaned from Antczak's cellphone, and evidence that state authorities had caught Antczak with child pornography in 2011. To show Antczak's 2011 acts, the Government called two additional witnesses, Agent Humphrey and Detective Nicole Freeley from the Broward County Sheriff's Office. Both focused most of their testimony on Antczak's possession of child pornography in 2011.

4

Before trial, Antczak tried to stanch all evidence relating to his prior possession of child pornography by filing a motion to suppress. The district court denied Antczak's motion because it concluded this evidence was admissible under Rule 404(b). In the court's view, Antczak's past possession of child pornography was relevant to his intent here, since both crimes "involve the same mental state: a prurient interest in young girls." Because of this ruling, Antczak proposed a question for voir dire designed to discern whether the Rule 404(b) evidence would render a prospective juror unduly prejudiced towards him since he had previously possessed child pornography.

The district court rejected Antczak's proposed question and substituted more general inquiries to root out potential prejudice amongst prospective jurors. Specifically, the court asked whether potential jurors would be more likely to convict the defendant of the instant offense because he had committed a crime in the past. The court's substituted inquires netted two potential jurors who said they would be unduly prejudiced, and the court subsequently dismissed them. We discuss the facts concerning this event in more detail when we analyze the specific issue below.

Antczak also moved to suppress the statements he made to agents after his arrest and the evidence they gleaned from his cellphone after he consented to their search. More specifically, Antczak contended that he had invoked his *Miranda*

5

rights by telling the agents he was going to "avoid answering any questions if that's okay." But after the agents responded by saying, "Okay, so you don't want to talk to us?," Antczak eventually confessed that he was at the hotel because a guy "wanted [him] to engage in activity with his daughter." [1] And Antczak eventually handed over his password and cellphone to the agents so they could search it. Once the agents unlocked the cellphone, they found the messages that Antczak had exchanged with Fowler, as well as an incriminating browser history.

---

[1] Based on a recording, the interaction between Antczak and the agents unfolded as follows:

> Antczak: Okay, okay, um I, I am going to avoid answering any questions if that's okay.
>
> Agent Fowler: Okay
>
> Agent Fowler: Okay, so you don't want to talk to us?
>
> Antczak: You can ask me questions if you want. Do I have the right to refuse each individual one or?
>
> Agent Fowler: Yeah, you can, if you want to talk to us, great, if not, that's great too.
>
> Antczak: Okay. There's no way that I'm going to be free to go if I answer questions?
>
> Agent Fowler: No
>
> Agent Humphrey: No
>
> Agent Humphrey: So what do you want to do?
>
> Antczak: Um, you can ask me anything if you want, that's fine.

Although the district court ruled that Antczak's post-arrest statements were inadmissible, the district court denied the suppression motion as it pertained to evidence the agents obtained from Antczak's cellphone. The district court found this evidence admissible because Antczak had voluntarily consented to the agents' search, and the agents' "technical" violation of Antczak's *Miranda* rights did not vitiate his later voluntary consent.

Returning to the trial, after hearing all of the evidence, the jury began its deliberations. But shortly after those deliberations began, the district court excused a juror because he told the district court that it was "impossible" for him to follow the court's instructions due to his past experience. Less than an hour after resuming its deliberations, the jury returned with a verdict finding Antczak guilty of § 2422(b). We discuss the facts concerned with this issue more fully in the context of our analysis below.

Based on Antczak's offense level of 36 and a criminal-history of Category I, the guideline range for Antczak's sentence was 188 to 235 months. But based in part upon the district court's finding that a criminal history of Category I "woefully understate[d] his true criminal background" due to Antczak's possession of child pornography and subsequent plea to the lesser charge of felony obscenity, the district court sentenced Antczak to 360 months in prison followed by supervised release for life. As a condition of Antczak's supervised release, the district court

restricted him from using a computer unless he received prior approval from the court, and his use was connected with authorized employment.

## II.

Antczak raises six challenges relating to his conviction under 18 U.S.C § 2422(b).  First, Antczak contends that the district court erred in rejecting his specific voir dire question in favor of two more general questions.  Second, he argues that the district court should not have admitted evidence under Rule 404(b), that he was caught with child pornography in 2011, because that evidence did not bear upon his intent in the current case.  Third, Antczak asserts that the district court should have suppressed the contents of his cellphone because he had invoked his *Miranda* rights before consenting to the agents' search.  Fourth, Antczak urges that the district court dismissed a juror with insufficient cause after deliberations began.  Fifth and sixth, Antczak challenges aspects of his sentence, complaining that its length is unreasonable and the restrictions imposed on his use of a computer are unconstitutional.

We affirm because Antzcak has failed to demonstrate that the district court abused its discretion in crafting its voir dire, dismissing a juror, or imposing his sentence.  And taking both of Antczak's evidentiary arguments together, even assuming without deciding that Antczak is right, the district court's purported errors were harmless.

8

### A. The District Court Did Not Abuse Its Discretion In Crafting the Voir Dire

Antczak requested a voir dire question aimed at plumbing potential prejudice that could result from the jury's knowledge that he had previously possessed child pornography. Specifically, he proposed the following question:

> If you heard evidence that Patrick Antczak had possessed and viewed child pornography in the past, would you be so upset or bothered by that, that you want to convict him of the current charge even if the government failed to prove the current charge beyond a reasonable doubt.

The district court rejected Antczak's proposed question; opting instead for two that were more general:

> If you were a juror in a case and you heard evidence that the defendant had previously committed another criminal office, would you believe that the defendant was more likely to have committed the charge he or she is on trial for, because of the fact that they had previously committed a different criminal offense;

> Some people may be less worried that they are convicting an innocent person if they know that the person had committed some other crime in the past. Does anyone here feel that way?

Antczak contends that these questions were insufficient to ferret out any potential prejudice because they did not discuss child pornography.

This Court reviews a district court's refusal to ask Antczak's proposed question at voir dire for an abuse of discretion. *See United States v. Chastain*, 198 F.3d 1338, 1347–48 (11th Cir. 1999). "[U]nder Fed. R. Crim. P. 24(a), a trial court has broad discretion in conducting a voir dire." *United States v. Shavers*, 615 F.2d

9

266, 268 (5th Cir. 1980). That discretion includes deciding whether to submit a party's proposed questions to the venire. *United States v. Tegzes*, 715 F.2d 505, 507 (11th Cir. 1983). "The voir dire conducted by the trial court need only provide 'reasonable assurance that prejudice will be discovered if present.'" *United States v. Vera*, 701 F.2d 1349, 1355 (11th Cir. 1983) (quoting *United States v. Holman*, 680 F.2d 1340, 1344 (11th Cir. 1982)).

The proper inquiry is whether the voir dire as a whole affords the defendant the protection he seeks. *See Tegzes*, 715 F.2d at 507. A district court does not abuse its discretion unless it unreasonably fails to craft inquiries that would uncover detectable prejudice. *Id.* The standard for evaluating the district court's exercise of its discretion is "whether the means employed to test impartiality have created a reasonable assurance that prejudice would be discovered if present." *Shavers*, 615 F.2d at 268.

Here, the district court did not abuse its discretion in substituting two voir dire questions in place of Antczak's proposed question. The district court's voir dire created reasonable assurances that Anctzak's essential concerns were identified: whether potential jurors would be more likely to convict Antczak because he had previously possessed child pornography. The potential prejudice that could have resulted from admitting evidence under Rule 404(b) might have occurred if a potential juror were unable to limit her or his consideration of

10

Antczak's prior act to the limited purpose of proving Antczak's intent.  But here, the district court's substituted questions were reasonably calculated to smoke that prejudice out.

In fact, the court's questions did just that.  After two jurors gave answers that suggested that they might be unable to limit the import of Antczak's prior acts to considering Antczak's intent here, the district court excused them for cause.

Nor does Antczak's reliance on *United States v. Shavers*, 615 F.2d 266, 268 (5th Cir. 1980), affect our analysis.  Antczak cites the case for the proposition that he should have been able to specifically ask whether the jurors would be unfairly prejudiced by learning that he previously possessed child pornography.  In *Shavers*, a case in which the defendant was claiming self-defense, the Fifth Circuit found that the district court abused its discretion by not permitting the defense to ask whether jurors (or their relatives) had been victims of a crime or whether they harbored beliefs that a person cannot use violence to repel another person's attacks. *Id.*  The *Shavers* Court reasoned that inquiring about "impartiality" did not suffice because those inquiries "might not reveal latent prejudices" against somebody who had used violent force. *Id.*

Here, unlike in *Shavers*, the court's substitute questions met the principal aim of Antczak's rejected inquiry:  whether the jury would improperly use extrinsic evidence Antczak had committed a "bad act" as evidence that he

11

committed the current offense. As far as discerning whether potential jurors harbored prejudice relating to Antczak's possession of child pornography, the district court covered that by inquiring into whether the nature of the instant charge—which is similar, but more inflammatory than simple possession of child pornography—would make jurors incapable of following the court's instructions or applying the law. Accordingly, the district court acted within its discretion when it rejected Antczak's requested question in favor of the two it asked.

### B. Even if Made in Error, the District Court's Evidentiary Rulings Were Harmless

We use the abuse-of-discretion standard when reviewing the district court's decision to admit or exclude evidence. *See, e.g.*, *United States v. Smith*, 122 F.3d 1355, 1357 (11th Cir. 1997). Further constraining our review of these issues is that the harmless-error doctrine applies to evidentiary rulings. *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005); Fed. R. Evid. 103(a); Fed. R. Crim. P. 52(a) (providing that, under the harmless error standard, "[a]ny error . . . that does not affect substantial rights must be disregarded"). Included among those evidentiary rulings subject to this type of review are decisions admitting evidence under Rule 404(b), *see United States v. Phaknikone*, 605 F.3d 1099, 1109 (11th Cir. 2010), and decisions denying motions to suppress on Fifth Amendment grounds, *see Henderson*, 409 F.3d at 1300.

When a trial judge has purportedly errantly admitted evidence in a criminal prosecution, we ask whether the errors had a "'substantial influence' on the outcome of a case or [left] 'grave doubt' as to whether they affected the outcome of a case." *United States v. Frazier*, 387 F.3d 1244, 1266 (11th Cir. 2004) (en banc) (quoting *Kotteakos v. United States*, 328 U.S. 750, 764–65 (1946)). "Overwhelming evidence of guilt is one factor that may be considered in finding harmless error." *United States v. Guzman*, 167 F.3d 1350, 1353 (11th Cir. 1999); *see also United States v. Chavez*, 204 F.3d 1305, 1317 (11th Cir. 2000) (finding that admission of evidence in violation of Fed. R. Evid. 404(b) was harmless error because the evidence presented at trial was "substantial" and the defendant's rights were not affected).

Here, we need not decide whether Antczak could succeed on the merits of his evidentiary arguments because even assuming without deciding that he could, there was overwhelming evidence of his guilt. To illustrate, the Government had independently of  the search of Antczak's phone, the 500 messages exchanged among Antczak, Fowler, and "Samantha."  In those 500 messages, which the Government read to the jury, Antczak was explicit and graphic about his intent to have sex with "Samantha," somebody he was told and had no reason to doubt was just nine years old.  Even more illustrative of Antzcak's desire and his intent to carry it out, he went to the arranged meeting with a condom (as he was previously

13

instructed by Fowler) and an iTunes gift card, which "Samantha" had previously told him to bring in exchange for sex. Nor did Antczak ever dispute that he was the one messaging Fowler or that he showed up at the hotel. Indeed, he agrees that this damaging evidence was "***never in dispute.***"

In light of this overwhelming evidence and our independent review of the entire record, we conclude with "fair assurance . . . that the judgment was not substantially swayed by the error," even if the district court actually erred. *Kotteakos*, 328 U.S. at 765; *see also Phaknikone*, 605 F.3d at 1109–10 (finding erroneous admission of evidence from defendant's internet website, in which he allegedly portrayed himself as a gangster, was harmless in light of the overwhelming evidence of his guilt); *United States v. Alexander*, 835 F.2d 1406, 1411 (11th Cir. 1988) ("[E]ven if the F.B.I. should have obtained a warrant in these circumstances, the district court's failure to suppress the evidence was harmless error."). Consequently, Antczak's challenges to the district court's evidentiary rulings are denied.

## C. The District Court Did Not Abuse Its Discretion in Dismissing a Juror

Soon after the jury began deliberating, a juror asked to be relieved. After the district court questioned the juror about why he wanted to be excused—treading lightly so as to not disturb the privacy of the jury's deliberations—the juror stated that he was unable to follow the court's instructions. The juror explained that he

14

had a friend who had been "catfished"[2] and had subsequently committed suicide. The juror stated that the evidence that Antczak was "catfished" by someone made it "impossible" for the juror to follow the court's instructions.

We "review a district court's ultimate decision to excuse a juror after the start of deliberations for abuse of discretion." *United States v. Abbell*, 271 F.3d 1286, 1302 (11th Cir. 2001) (citing *United States v. Register*, 182 F.3d 820, 839 (11th Cir. 1999)). And we afford the district court wide discretion in making that decision; reversal is appropriate "only if we find that it discharged the juror 'without factual support, or for a legally irrelevant reason.'" *Id.* (quoting *United States v. Smith*, 918 F.2d 1501, 1512 (11th Cir. 1990)). Because the "demeanor" of the pertinent juror is important to these determinations, the district court is "uniquely situated to make the credibility determinations that must be made in cases like this one: where a juror's motivations and intentions are at issue." *Abbell*, 271 F.3d at 1303.

Federal Rule of Criminal Procedure 23(b) permits a district court "to excuse a juror for just cause after the jury has retired to consider its verdict." Of particular relevance here, "just cause" exists when a juror refuses to apply the law or to

---

[2] "Catfishing" refers to the phenomenon of internet predators that fabricate online identities to trick people into emotional or romantic relationships. *Catfishing*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/catfish (last visited Oct. 8, 2018).

15

follow the court's instructions. *United States v. Geffrard*, 87 F.3d 448, 451–52 (11th Cir. 1996) (excusing a juror who expressed inability to follow judge's instructions on the law due to religious beliefs). But the district court must proceed delicately in assessing the juror and whether good cause exists: "[W]e have 'caution[ed] district courts to be careful about invading the secrecy of the jury's deliberations and to err on the side of too little inquiry as opposed to too much.'" *United States v. Augustin*, 661 F.3d 1105, 1133 (11th Cir. 2011) (quoting *Abbell*, 271 F.3d at 1304 n.20).

Antczak asserts that the district court abused its discretion in dismissing a juror after deliberations began because the district court neglected to find good cause before doing so. But the record directly contradicts Antczak's assertion. In fact, the district court confirmed that the juror was not requesting to be removed due to a personality conflict with another juror or due to a temporary illness. Instead, the juror told the district court that his incapability was no passing storm: his emotional and personal connection to some of the evidence made it "impossible" to follow the court's instructions. Thus, the district court's inquiry was sufficient, and the court had good cause to dismiss the juror because the juror confirmed that he was unable to carry out his most basic duty—following the court's instructions. *See Geffrard*, 87 F.3d at 451–52. This aspect of Antczak's appeal is therefore denied.

16

### D. The District Court Did Not Abuse Its Discretion in Imposing a 360-Month Sentence

Antczak appeals his 360-month sentence, contending that it was both procedurally and substantively unreasonable because it was higher than the guidelines range and because the district court neglected to provide sufficient justification for that upward departure.  We review the reasonableness of a sentence under the familiar abuse-of-discretion standard.  *See United States v. Irey*, 612 F.3d 1160, 1188–89 (11th Cir. 2010) (en banc).  Antczak, as the party challenging the sentence, bears the burden to show that the sentence is unreasonable in light of the record and the § 3553(a) factors.  *See United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

We evaluate the reasonableness of the sentence imposed by the district court by considering the totality of the circumstances.  *See id.*  The district court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes listed in § 3553(a), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, protect the public from the defendant's future criminal conduct, provide the defendant with needed educational and vocational training, and avoid unwarranted sentencing disparities.  18 U.S.C. § 3553(a)(2), (6).  The court must also consider the nature and circumstances of the offense, and the history and characteristics of the defendant.  *Id.* § 3553(a)(1).

17

Apportioning weight to the § 3553(a) factors is committed to the sound discretion of the district court. *United States v. Langston*, 590 F.3d 1226, 1237 (11th Cir. 2009). We will remand for resentencing only when "'left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.'" *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008) (quoting *United States v. McBride,* 511 F.3d 1293, 1297–98 (11th Cir. 2007)). However, a court can abuse its discretion when it (1) unjustifiably relies on any one factor, (2) selects the sentence arbitrarily, (3) bases the sentence on impermissible factors, or (4) fails to consider relevant factors. *Id.* at 1191–92.

"A sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence." *United States v. Dougherty*, 754 F.3d 1353, 1362 (11th Cir. 2014); *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). If the district court "varies from the Guidelines range, it must offer a justification sufficient to support the degree of the variance." *United States v. Kuhlman*, 711 F.3d 1321, 1326 (11th Cir. 2013).

Here, the district court did not abuse its discretion when imposing the 360-month sentence even though the guidelines range was 188 to 235 months. For example, the district judge noted the escalating pattern of Antczak's conduct—

18

increasing from watching child pornography online to attempting to entice a 9-year-old into sex in real life. The judge also accounted for the fact that though Antczak previously had been convicted of only felony obscenity, he had actually possessed eleven pornographic images of children—a fact the judge concluded rendered Antczak's Category I criminal-history classification "woefully" understated.  In addition, the district court was troubled by and gave weight to the fact that Antczak committed the instant offense mere months after he had completed sex-offender therapy.  And while Antczak complains that the court did not account for his troubled childhood, the record reflects that the judge did, in fact, give limited weight to that circumstance.

Based on this record, we cannot say that the district court procedurally erred when imposing Antczak's sentence.  And though the sentence exceeded the high end of the guidelines range, it still fell far below the statutory maximum penalty of life imprisonment.  *See, e.g.*, *Gonzalez*, 550 F.3d at 1324 (holding that the sentence was reasonable in part because it was far below the statutory maximum).

Given the district court's reasoned and considered explanation of why the facts in this case warranted a sentence above the guidelines, we conclude the

19

district court did not abuse its discretion in sentencing Antczak to 360 months' imprisonment and that Antczak's sentence was not substantively unreasonable.[3]

### E. The District Court Did Not Err by Imposing a Lifetime Computer Restriction

The district court restricted Antczak's cyber life as part of the terms of his lifetime supervised release:  Antczak cannot possess or use a computer unless he receives prior approval from the court, and any use must be related to authorized employment.  Antczak argues that the lifetime computer restriction violates the First Amendment, in light of the Supreme Court's recent decision in *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017).  In *Packingham*, the Court concluded under the circumstances there that foreclosing access to social media violates the First Amendment.  So, Antczak reasons, if the prevention of social-media access violates the First Amendment, so must use of a computer altogether.

This Court ordinarily reviews the district court's imposition of conditions of supervised release for abuse of discretion.  *See, e.g., United States v. Moran*, 573 F.3d 1132, 1137 (11th Cir. 2009).  But because Antczak neglected to raise this

---

[3] Antczak contends that it was improper for the district court to consider that he received a break on the felony obscenity charge.  But it was not.  Antczak's report placed him in the Criminal History Category I even though that category often includes individuals who have never been previously arrested, let alone convicted.  And possessing child pornography—especially where the offender admits to downloading multiple images—can carry a much more substantial sentence than the five months of probation the state court imposed on Antczak.  *Cf.* 18 U.S.C.. § 2252(b)(1) (stating that child pornography conviction carries a mandatory minimum of five years).

20

challenge below, we review here for plain error. *Id.* "'[T]here can be no plain error where there is not precedent from the Supreme Court or this Court directly resolving it.'" *United States v. Lange*, 862 F.3d 1290, 1298 (11th Cir. 2017) (quoting *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003); *see also United States v. Carpenter*, 803 F.3d 1224, 1239 (11th Cir. 2015) ("Carpenter must show that some controlling authority clearly established that the court erred in imposing the challenged conditions. He cannot. Therefore, we need not, and do not, decide whether the court indeed erred, nor whether Carpenter can meet the other requirements of plain error review.").

*Packingham* does not "directly resolve" Antczak's appeal since *Packingham* dealt with a different issue. *Packingham* concerned a North Carolina statute that "impose[d] severe restrictions on persons who already have served their sentence and are no longer subject to the supervision of the criminal justice system." *Packingham*, 137 S. Ct. at 1737. Put differently, unlike the condition imposed on Antczak for his past behavior, the statute at issue in *Packingham* was prospective: rather than simply punishing a past crime, the statute there made it a new felony for a person to use all social-media outlets, even though that person had had all impingements upon his constitutional rights lifted by fully serving the prior sentence. *See id.*

21

Several other Circuits have noted this distinction and have refused to notice the error in the same circumstances. *See United States v. Halverson*, 897 F.3d 645, 658 (5th Cir. 2018) ("[T]he driving concern of the [*Packingham*] Court was the imposition of a severe restriction on persons who had served their sentences and were no longer subject to the supervision of the criminal justice system."); *United States v. Rock*, 863 F.3d 827, 831 (D.C. Cir. 2017) ("The Supreme Court's recent decision in *Packingham* . . . does not make the error plain because Rock's condition is imposed as part of his supervised-release sentence, and is not a post-custodial restriction of the sort imposed on *Packingham* . . . ."). So *Packingham* does not show that the district court plainly erred in imposing a lifetime ban on Antczak's computer access.

And in fact, Eleventh Circuit precedent actually upholds the validity of such a restriction under appropriate circumstances. In *United States v. Carpenter*, we found that the district court did not plainly err by imposing a condition of supervised release that prohibited the defendant from possessing a computer for life. 803 F.3d at 1237–40. We therefore conclude that Antczak has not demonstrated error, plain or otherwise.

## V.

For the foregoing reasons, we affirm on all issues.

**AFFIRMED.**

22